1
2
3                 UNITED STATES DISTRICT COURT
4                     DISTRICT OF NEVADA
5                           * * *

6 KENNETH MAURICE GRANT         |  Case No. 3:16-cv-00104-MMD-CLB

7                     Petitioner,   |           ORDER

8     v.

9 QUENTIN BYRNE, *et al.*,

                   Respondents.
10

11 **I.    SUMMARY**

12       Before the Court for a decision on the merits is a petition for a writ of habeas corpus

13 filed by Kenneth Maurice Grant, who is incarcerated in the custody of the Nevada

14 Department of Corrections ("NDOC"). (ECF No. 62.) For reasons that follow, the petition

15 will be denied.

16 **II.    BACKGROUND**

17       Grant stands convicted of first-degree murder with use of a deadly weapon and

18 robbery with use of a deadly weapon. The Nevada Supreme Court briefly summarized

19 the facts of his case as follows:

20
21         The body of David Sygnarski was found on April 26, 2001, in a hotel room
        previously rented by Paulette Perry and Kenneth Grant. Hotel surveillance
        tapes show Sygnarski entering the room with Perry and Grant, Perry and
22         Grant leaving and returning with cleaning supplies, and Perry and Grant
        leaving for good, but do not show Sygnarski leaving. Sygnarski's body was
23         later found in the hotel room.

24 (ECF No. 25-11 at 2.) After a jury found him guilty, Grant was sentenced to life with the

25 possibility of parole after 40 years. (ECF No. 25-3.) Grant's judgment of conviction was

26 entered in the Eighth Judicial District Court for Clark County, Nevada, in December 2003

27 (ECF No. 25-6). The jury found Grant not guilty of conspiracy to commit robbery. (ECF

28 No. 24-3 at 3.) In a separate trial held prior to Grant's, a jury found Perry guilty of first-

1  degree murder with use of a deadly weapon, conspiracy to commit robbery, and robbery

2  with use of a deadly weapon. (ECF No. 90-20 at 5-6.)

3       Grant appealed his judgment of conviction. (ECF No. 25-7.) In December 2005,

4  the Nevada Supreme Court entered an order affirming the judgment. (ECF No. 25-11.)

5  Grant then filed a *pro se* petition for writ of habeas corpus in the state district court. (ECF

6  No. 25-14.) With the assistance of court-appointed counsel, he filed an amended state

7  petition that consisted entirely of claims that he was denied his Sixth Amendment right to

8  effective assistance of counsel. (ECF No. 26-5.) The state district court denied the

9  amended petition. (ECF No. 28-3.)

10      Grant appealed. (ECF No. 28-4.) The Nevada Supreme Court affirmed the district

11 court's order denying post-conviction relief. (ECF No. 28-8.) Grant initiated this federal

12 habeas proceeding by filing a *pro se* petition on February 23, 2016. (ECF No. 6.)

13      After Respondents moved to dismiss (ECF No. 19), Grant filed a renewed motion

14 for appointment of counsel. (ECF No. 29.) The Court granted the motion and denied

15 Respondents' motion to dismiss without prejudice. (ECF No. 35.)

16      On August 24, 2018, with the assistance of counsel, Grant filed his first amended

17 petition. (ECF No. 44.) After Respondents again moved to dismiss (ECF No. 48), he

18 sought leave to file a second amended petition, which Respondents did not oppose. (ECF

19 Nos. 55, 56.)

20      On October 11, 2019, Grant filed a second amended petition (ECF No. 62), in

21 response to which the Respondents again filed a motion to dismiss (ECF No. 64). The

22 Court granted the motion in part by dismissing Ground One(D) of the petition and directed

23 the Respondents to file an answer to the remaining claims. (ECF No. 73.)

24      Respondents filed their answer on October 12, 2020. (ECF No. 78.) Instead of

25 filing a reply to the answer, Grant filed a motion for leave to file a third amended complaint

26 to add an additional ineffective assistance of trial counsel claim. (ECF No. 82.) The Court

27 denied that motion and directed Grant to file his reply. (ECF No. 87.) He filed his reply on

28 July 12, 2021. (ECF No. 91.)

2

1    **III.    LEGAL STANDARD**

2         This action is governed by the Antiterrorism and Effective Death Penalty Act

3    ("AEDPA"). 28 U.S.C. § 2254(d) sets forth the standard of review under AEDPA:

4

5         An application for a writ of habeas corpus on behalf of a person in custody
         pursuant to the judgment of a State court shall not be granted with respect

6         to any claim that was adjudicated on the merits in State court proceedings
         unless the adjudication of the claim –

7              (1) resulted in a decision that was contrary to, or involved an
              unreasonable application of, clearly established Federal law, as

8              determined by the Supreme Court of the United States; or

9              (2) resulted in a decision that was based on an unreasonable
              determination of the facts in light of the evidence presented in the

10             State court proceeding.

11   A decision of a state court is "contrary to" clearly established federal law if the state court

12   arrives at a conclusion opposite that reached by the Supreme Court on a question of law

13   (that is, applies a rule that contradicts governing Supreme Court precedent) or if the state

14   court decides a case differently than the Supreme Court has on a set of materially

15   indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000). An

16   "unreasonable application" occurs when "a state-court decision unreasonably applies the

17   law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409. "[A] federal habeas

18   court may not "issue the writ simply because that court concludes in its independent

19   judgment that the relevant state-court decision applied clearly established federal law

20   erroneously or incorrectly." *Id.* at 411.

21        The Supreme Court has explained that "[a] federal court's collateral review of a

22   state-court decision must be consistent with the respect due state courts in our federal

23   system." *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003). The "AEDPA thus imposes a

24   'highly deferential standard for evaluating state-court rulings,' and 'demands that state-

25   court decisions be given the benefit of the doubt.'" *Renico v. Lett*, 559 U.S. 766, 773

26   (2010) (quoting *Lindh v. Murphy*, 521 U.S. 320, 333 n. 7 (1997); *Woodford v. Viscotti*, 537

27   U.S. 19, 24 (2002) (per curiam)). "A state court's determination that a claim lacks merit

28   precludes federal habeas relief so long as 'fairminded jurists could disagree' on the

3

1   correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011)

2   (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has

3   emphasized "that even a strong case for relief does not mean the state court's contrary

4   conclusion was unreasonable." *Id.* (citing *Lockyer v. Andrade*, 538 U.S. 63, 75 (2003));

5   *see also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the AEDPA standard

6   as "a difficult to meet and highly deferential standard for evaluating state-court rulings,

7   which demands that state-court decisions be given the benefit of the doubt") (internal

8   quotation marks and citations omitted).

9       "[A] federal court may not second-guess a state court's fact-finding process unless,

10  after review of the state-court record, it determines that the state court was not merely

11  wrong, but actually unreasonable." *Taylor v. Maddox*, 366 F.3d 992, 999 (9th Cir. 2004),

12  *overruled on other grounds by Murray v. Schriro*, 745 F.3d 984, 999-1000 (9th Cir. 2014).;

13  *see also Miller-El*, 537 U.S. at 340 ("[A] decision adjudicated on the merits in a state court

14  and based on a factual determination will not be overturned on factual grounds unless

15  objectively unreasonable in light of the evidence presented in the state-court proceeding,

16  § 2254(d)(2).").

17      Because de novo review is more favorable to the petitioner, federal courts can

18  deny writs of habeas corpus under § 2254 by engaging in de novo review rather than

19  applying the deferential AEDPA standard. *Berghuis v. Thompkins*, 560 U.S. 370, 390

20  (2010).

21  **IV.    DISCUSSION**

22      Grant alleges in Ground One of his second amended petition that he was deprived

23  of his right to the effective assistance of counsel. In Ground Two, he alleges a deprivation

24  of his rights to due process and a fair trial as a result of prosecutorial misconduct. The

25  Court will address each ground in turn.

26      **A.    Ground One**

27      With Ground One(D) dismissed as procedurally defaulted, three sub-claims of

28  ineffective assistance of counsel (IAC) remain before the Court for adjudication. To

4

1   demonstrate ineffective assistance of counsel in violation of the Sixth and Fourteenth

2   Amendments, a convicted defendant must show 1) that counsel's representation fell

3   below an objective standard of reasonableness under prevailing professional norms in

4   light of all the circumstances of the particular case; and 2) that it is reasonably probable

5   that, but for counsel's errors, the result of the proceeding would have been different. *See*

6   *Strickland v. Washington*, 466 U.S. 668, 687-94 (1984).

7       **1.**  **Ground One(A)**

8      In Ground One(A), Grant alleges counsel's performance fell below constitutional

9   standards because counsel failed to investigate and present expert testimony to establish

10   facts crucial to the defense theory of the case. The State's primary theory at trial was that

11   Grant and Perry devised a robbery scheme in order to obtain drug money. The plan was

12   for Perry to lure a victim to their hotel room by presenting herself as prostitute while Grant

13   waited in the room to assist in the robbery. The defense theory was that Sygnarski came

14   to the room to smoke crack cocaine with Perry and Grant and that Perry killed Sygnarski

15   to defend herself from an assault after Grant had left to buy more drugs. The defense

16   supported this theory by pointing to evidence that the door was deadbolted when Grant

17   attempted to return to the room.

18      Grant contends that counsel should have presented testimony from a toxicologist

19   refuting testimony by the State's medical examiner, Dr. Sheldon Green. Dr. Green

20   testified that Sygnarski had a small amount of cocaine in his blood stream when he died

21   but the ratio of cocaine to cocaine-metabolite indicated that it had been in his system for

22   several hours. (ECF No. 23-2 at 25-28.) The State relied on this testimony to refute the

23   defense's claim that Sygnarski had come up to the room to smoke crack with Perry and

24   Grant. (ECF No. 23-3 at 17-18.) In state post-conviction proceedings, Grant presented

25   expert reports that called into question Dr. Green's conclusions and showed that it was

26   possible Sygnarski ingested cocaine within an hour of his death. (ECF No. 27-2 at 87-93;

27   ECF No. 27-4.)

28

1    Grant also contends that testimony from a pathologist could have supported his

2    claim that Perry killed Sygnarski by herself. Dr. Green testified at trial that the blunt force

3    trauma Sygnarski suffered was more consistent with the use of fists rather than the

4    receiver of a telephone as the defense suggested.[1] (ECF No. 23-2 at 45-47.) This

5    testimony undermined the defense theory because Perry weighed only a 100 pounds

6    while Sygnarski weighed close to 200 (ECF No. 62 at 14-15), making it unlikely that she

7    alone would have been able inflict both the blunt force trauma and stab wounds that

8    caused his death without at least using an object to knock him into submission. Dr. Green

9    also dismissed the defense's suggestion that abrasions on Sygnarski's knees were

10   consistent with him straddling over someone on the floor. (ECF No. 23-2 at 53.) In state

11   post-conviction proceedings, Grant presented a declaration from a forensic pathologist,

12   Dr. Terri Haddix, indicating that injuries to Sygnarski's face could have been produced by

13   being hit with a telephone and that abrasions on Sygnarski's knees could have resulted

14   from him straddling a struggling person. (ECF No. 27-4 at 5-6.)

15   In deciding Grant's post-conviction appeal, the Nevada Supreme Court correctly

16   cited *Strickland* as the federal law standard for adjudicating ineffective assistance of

17   counsel claims. (ECF No. 28-8 at 2.) With respect to the claim that is presented to this

18   Court as Ground One(A), the court stated as follows:

19

20   First, Grant contends that the district court erred by denying his claims that
     counsel was ineffective for failing to investigate and present testimony from
     a toxicologist. We disagree. Taken as true, such testimony would only have
21   supported Grant's claim that he and his girlfriend were drug users and the
     victim came up to their hotel room to use drugs, not for sexual activity.
22   Because Grant fails to demonstrate that such testimony would have led to
     a different result at trial,[1] we conclude that the district court did not err by
23   denying this claim without conducting an evidentiary hearing.

24   Second, Grant contends that the district court erred by denying his claim
     that counsel was ineffective for failing to investigate and present testimony
25   from a pathologist. However, the record reflects that counsel sought the
     services of a pathologist, and while Grant has not provided complete trial
26   transcripts, we must infer from the record that has been provide that counsel

27   ⎯⎯⎯⎯⎯⎯⎯⎯⎯

     [1]Testimony at Grant's trial established that the telephone in the hotel room had
28   been pulled from the wall and had blood on it. (ECF No. 21-12 at 35; ECF No. 22-3 at
     59.) Perry testified at her trial that she hit Sygnarski in the head with the receiver of the
     telephone to repel his sexual advances. (ECF No. 90-17 at 176.)

1

2       made a strategic decision not to have the pathologist testify. *See Cullen v.
        Pinholster*, 563 U.S. 170 (2011) ("*Strickland* specifically commands that a
3       court must indulge the strong presumption that counsel made all significant
        decisions in the exercise of reasonable professional judgment." (internal
4       quotation marks and alterations omitted)); *State v. Powell*, 122 Nev. 751,
        759, 138 P.3d 453, 458 (2006) ("Judicial review of an attorney's
5       representation is highly deferential and a claimant must overcome the
        presumption that a challenged action might be considered sound strategy.")
6       Moreover, given the state of the evidence, Grant fails to demonstrate that
        the result of the proceedings would have been different had a pathologist
        testified. Therefore, we conclude that the district court did not err by denying
        this claim without conducting an evidentiary hearing.

7                        _____
                        [1]Grant was acquitted of conspiracy to commit robbery.

8

9       (*Id.* at 3-4.)

10          Grant argues that the Nevada Supreme Court's denial of the claim is not entitled

11  to deference under § 2254(d) because the court misapplied the *Strickland* prejudice

12  standard by requiring him to show that, but for counsel's errors, the outcome of the

13  proceeding would have been different. He points out that the correct threshold is only a

14  *reasonable probability* that the outcome would have been different. Even so, the claim

15  fails under de novo review.

16          At trial, the State presented security videos and a report generated by the hotel

17  room's electronic door lock to show when individuals entered and exited Grant and

18  Perry's room. (ECF No. 21-13 at 5-10, 14-25; ECF No. 22-3 at 99-136.) That evidence

19  showed that Grant and Perry checked into the hotel at about 1:00 a.m. on April 24, 2001.

20  (*Id.*) After leaving and returning numerous times in the early morning hours, Perry left the

21  room at approximately 6:30 a.m. and returned about five hours later (at 11:21 a.m.) with

22  Sygnarski. (*Id.*) While Perry was gone, Grant also exited and entered numerous times but

23  was in the room when Perry returned with Sygnarski. (*Id.*) Grant emerged about an hour

24  later, but Sygnarski never appeared again. (*Id.*) Later that evening, Grant and Perry left

25  the room together and returned with what appeared to be cleaning supplies. (*Id.*)

26          Even if Grant was able to establish through a toxicologist that Sygnarski had

27  ingested cocaine closer to his time of death, it would not have improved Grant's chances

28  for a better outcome at trial. By acquitting Grant on the conspiracy charge, the jury

apparently rejected the State's theory about a prearranged robbery. The verdict on the first-degree murder and robbery counts did not depend on whether Perry was out looking for drugs rather than trying to lure a victim back to the room by posing as a prostitute or whether Sygnarski came to the room to smoke crack rather than for sexual activity. Thus, additional toxicology evidence would not have impacted the jury's decision to find Grant guilty of those charges.

Similarly, Grant has not shown a reasonable probability of a better outcome had counsel presented testimony from a pathologist. As the Nevada Supreme Court noted, counsel retained the services of a pathologist, Dr. Todd Grey. Asked by counsel whether medical evidence supported "the conclusion the victim was killed solely by Ms. Perry," Dr. Grey sent a letter to counsel several months before trial indicating that it did not. (ECF No. 26-2 at 63-64.) At trial, counsel obtained permission from the trial court for Dr. Grey to be present while Dr. Green testified (ECF No. 23-2 at 4.) but chose not to call him as a witness.

Grant argues that it was ineffective assistance for counsel to not call Dr. Grey as a witness because Dr. Grey could have "undermined Dr. Green's version of events." (ECF No. 91 at 17.) He fails to demonstrate, however, what helpful testimony Dr. Grey would have been able to provide. For example, he claims Dr. Grey "could have testified that [the victim's] knee abrasions were consistent with straddling someone on the floor" but does not provide any evidence showing Dr. Grey held such an opinion. (*Id.*)

Grant also relies on the opinion of Dr. Haddix to support his IAC claim, but her declaration is not particularly compelling. As noted, Dr. Haddix disagreed with Dr. Green's testimony on whether the injuries to Sygnarski's face could have been produced by being hit with a telephone and whether the abrasions on Sygnarski's knees could have resulted from him straddling a struggling person. (ECF No. 27-4 at 5-6.) However, her opinions on these points are stated only as possibilities not conclusions. (*Id.*) Similarly, she noted that it was "theoretically possible" that Sygnarski may have been "stunned or had a brief loss of consciousness" that facilitated the infliction of the fatal stab wounds. (*Id.*) Dr. Grey

8

1  noted in his letter, however, that it was "unlikely" that the injuries to Sygnarski's head

2  would have "produced unconsciousness or incapacitation." (EFC No. 26-2 at 63.) Having

3  obtained that opinion, counsel was not obligated to seek a more favorable opinion from

4  another expert. *See Payton v. Cullen*, 658 F.3d 890, 896 (9th Cir. 2011). [2]

5          Finally, other evidence presented at trial rendered implausible the theory that Perry

6  alone killed Sygnarski. According to the theory, the dispute between the two and the

7  physical altercation that resulted in Sygnarski's death occurred between the time Grant

8  left to buy more drugs and when he returned to a deadbolted door. (ECF No. 91 at 12-

9  13.) That time interval was only 17 minutes. (*Id.*) Videotape footage of Perry after the

10  supposed fight to the death with a person nearly twice her size showed that she did not

11  appear to have suffered any injuries. (ECF No. 23-4 at 16.) The video evidence also

12  showed that Grant wore the same clothing for his numerous trips out of the room on the

13  morning of the killing but when he emerged for the first time after Perry and Sygnarski

14  entered, he had on different clothes. (ECF No. 23-3 at 18-19.) As the State pointed out,

15  the likely explanation is that he got blood on the clothes he was wearing earlier. (*Id.*)

16          In summary, Grant has not shown that trial counsel was ineffective in failing to

17  investigate and present expert testimony to establish facts crucial to the defense theory

18  of the case. Ground One(A) is denied.

19                          **2.      Ground One(B)**

20          In Ground One(B), Grant alleges counsel provided ineffective assistance of

21  counsel by failing to present evidence of Perry's propensity for violence. According to

22  Grant, counsel should have presented evidence showing that in 1998 Perry had resisted

23  arrest in Dallas, Texas, by attempting to kick and bite arresting officers. Grant further

24  alleges that counsel could have introduced the results of mental health testing that

25  showed Perry was prone to aggressive behavior.

26

27          [2]Grant refers in his pleadings to counsel failing to have an expert establish

28  Sygnarski's time of death (ECF No. 62 at 11; ECF No. 91 at 12-13) but has presented no
       evidence showing that an expert would have been able to make such a determination in
       a manner that would have benefitted his defense.

1
2

The Nevada Supreme Court adjudicated this claim in Grant's state post-conviction proceedings and decided as follows:

3
4
5
6
7

> Grant contends that the district court erred by denying his claim that counsel was ineffective for failing to investigate and present evidence of his girlfriend's prior violent actions and statements. Grant fails to demonstrate that this evidence would have been admissible at trial. Moreover, he fails to demonstrate that the result of trial would have been different had counsel presented this evidence. Therefore, we conclude the district court did not err by denying this claim without an evidentiary hearing.

8

(ECF No. 28-8 at 4.) While Grant argues that this decision is also not worthy of deference under § 2254(d), the claim fails under this Court's de novo review.

9
10
11
12
13
14
15
16
17

At trial, Grant's counsel effectively elicited testimony from prosecution witnesses about Perry's aggressive behavior and highlighted Perry's violent acts in her closing argument. The State presented the testimony of Harvey Baughmen, a former friend of Perry and Grant, who recounted an incident wherein Perry and Grant waived him over while driving and, after a short conversation, attacked him and took money from him. (ECF No. 21-12 at 5-14.) On cross-examination, counsel had Baughmen recount Perry's involvement in the attack. (ECF No. 21-12 at 19.) She also got him to testify that Perry was "a little tiger," that she was "not to be trifled with," and that he had seen her slice up a waterbed with a knife. (*Id.*)

18
19
20
21
22
23

Another acquaintance of Perry's confirmed on cross-examination that Perry would have been able to singlehandedly take down Baughmen, "a rather large man," and that Perry had once confronted the acquaintance's friend in a threatening manner with a knife. (ECF No. 23-1 at 103-06.) Counsel's closing argument emphasized Baughmen's testimony about the size difference between Perry and himself and about how she was nonetheless able to pull him down from behind by grabbing his hair. (ECF No. 23-4 at 5.)

24
25
26
27
28

Counsel's failure to also present evidence about the incident in Texas and the mental health test results did not deprive Grant of effective assistance of counsel. As the Nevada Supreme Court noted, it is not clear the evidence would have been admissible. *See* NRS § 48.045(2) (prohibiting the admission of other crimes, wrongs, or acts "to prove the character of a person in order to show that he acted in conformity therewith");

1  *Mortensen v. State*, 986 P.2d 1105, 1110 (Nev. 1999) (holding NRS § 48.045(2) applies

2  to witnesses). And, even if admitted, the evidence Grant cites would have had only

3  marginal probative value beyond the evidence already before the jury and would not have

4  exculpated Grant.

5  Thus, Grant has not shown that counsel's performance fell below an objective

6  standard of reasonableness or that he was prejudiced by counsel's alleged omission.

7  Ground One(B) is denied

8  **3.    Ground One(C)**

9  In Ground One(C), Grant alleges counsel's assistance was ineffective by failing to

10  present lay or expert testimony about the customs and habits of prostitutes. He claims

11  that such an expert or lay witness would have been able to testify about various aspects

12  of prostitution that would have assisted the defense in showing that Perry was not

13  presenting herself as a prostitute to lure Sygnarski back to the hotel room as the

14  prosecution claimed. According to Grant, an ex-prostitute would have informed the jury

15  about what prostitutes typically wear, how they confirm a customer has money, and the

16  fact that the customer normally controls where the sex acts occur.

17  The Nevada Supreme Court rejected this claim in Grant's state post-conviction

18  proceedings, stating as follows:

19

20  Grant contends that the district court erred by denying his claim that counsel
was ineffective for failing to investigate and present testimony from an ex-
prostitute. While Grant mentions topics that an ex-prostitute counsel have

21  discussed, he fails to describe with specificity what she would have said and
how such testimony would have changed the result at trial. Therefore, Grant

22  fails to demonstrate that the district court erred by denying this claim without
conducting an evidentiary hearing. *See Hargrove v. State*, 100 Nev. 498,

23  502, 686 P.2d 222, 225 (1984).

24  (ECF No. 28-8 at 4.) Once again, the claim fails irrespective of § 2254(d)'s deference

25  requirement.

26  As discussed above in relation to Ground One(A), the jury found Grant not guilty

27  of conspiracy to commit robbery, which shows that it was not convinced Grant and Perry

28  devised a scheme to rob someone by having Perry pose as a prostitute. Consequently,

11

1    the outcome of Grant's case did not depend on the defense demonstrating that Perry's

2    conduct and appearance were not consistent with the customs and habits of prostitutes.

3    In addition, Grant has not made any showing as to the actual witness he could have called

4    or the specific testimony he or she would have provided. *See Wildman v. Johnson*, 261

5    F.3d 832, 839 (9th Cir. 2001) (mere speculation that an expert would have testified on

6    petitioner's behalf was insufficient to establish *Strickland* prejudice); *Grisby v. Blodgett*,

7    130 F .3d 365, 373 (9th Cir.1997) ("Speculation about what an expert could have said is

8    not enough to establish prejudice [under *Strickland*]").

9        Because Grant falls well short of meeting either prong of the *Strickland* standard,

10   Ground One(D) is denied.

11       **B.    Ground Two**

12       In Ground Two, Grant alleges that the district attorney's use of inconsistent

13   theories for the same offenses and course of conduct in his trial and the trial of

14   codefendant Perry violated his constitutional right to due process and a fair trial. Grant

15   claims the prosecutor's closing argument suggesting that he was the one "calling the

16   shots" conflicted with argument at Perry's trial that she was the one in control. (ECF No.

17   62 at 20.)

18       When Grant presented this claim in his direct appeal, the Nevada Supreme Court

19   summarily rejected it in a footnote. (ECF No. 25-11 at 2-3 n.1.) Even so, the decision is

20   still deemed an adjudication on the merits for the purposes of § 2254(d). *See Harrington*,

21   562 U.S. at 100. Accordingly, this Court "must determine what arguments or theories

22   supported or, as here, could have supported, the state court's decision; and then it must

23   ask whether it is possible fairminded jurists could disagree that those arguments or

24   theories are inconsistent with the holding in a prior decision of [the Supreme Court]." *Id.*

25   at 102.

26       On habeas review, the question is whether the prosecutor's actions "so injected

27   the trial with unfairness as to make the resulting conviction a denial of due process."

28   *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974). This Court agrees that due process

1    concerns would be present if the State's theories in each case negated each other. For

2    example, Respondents cite to a Ninth Circuit case in which the prosecutor presented two

3    mutually exclusive theories in two different trials. (ECF No. 78 at 20-21 (discussing

4    *Thompson v. Calderon*, 120 F.3d 1045 (9th Cir. 1997)).) The prosecutor in the first trial

5    asserted that the defendant, Leitch, plotted to kill his former girlfriend and that Leitch and

6    another individual, Thompson, committed the actual killing together. *See Thompson*, 120

7    F.3d at 1059. In Thomspon's trial, the prosecutor claimed that Thompson acted alone and

8    killed the victim for a reason wholly unrelated to the motive proposed at Leitch's trial. *See*

9    *id.*

10   Nothing remotely similar occurred here. As in Grant's trial, the prosecutor in Perry's

11   trial advanced the theory that Perry lured Sygnarski up to the hotel room with the intention

12   of robbing him with Grant's assistance and that Sygnarski was killed when he attempted

13   to resist. (ECF No. 90-19 at 48-49.) In both cases, the prosecutor claimed Perry and Grant

14   were equally culpable of the same crimes based on the same general set of facts. The

15   argument upon which Ground Two is premised occurred in the State's rebuttal closing

16   argument and was merely a response to Grant's contention that he was only guilty of

17   being an accessory after the fact. (ECF No. 23-4 at 21.)

18   Because the State's theory supporting the crimes for which Grant was convicted

19   was not inconsistent with theory it presented in Perry's trial, the State did not violate

20   Grant's right to due process. Ground Two is denied.

21   For the reasons set forth above, Grant's petition for habeas relief will be denied.

22   **C.    Certificate of Appealability**

23   This is a final order adverse to a habeas petitioner. As such, Rule 11 of the Rules

24   Governing Section 2254 Cases requires this Court to issue or deny a certificate of

25   appealability (COA). Accordingly, the Court has *sua sponte* evaluated the claims within

26   the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v.*

27   *Calderon*, 281 F.3d 851, 864-65 (9th Cir. 2002).

28   ///

13

1    Pursuant to 28 U.S.C. § 2253(c)(2), a COA may issue only when the petitioner

2    "has made a substantial showing of the denial of a constitutional right." With respect to

3    claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would

4    find the district court's assessment of the constitutional claims debatable or wrong." *Slack*

5    *v. McDaniel*, 529 U.S. 473, 484 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4

6    (1983)). For procedural rulings, a COA will issue only if reasonable jurists could debate

7    (1) whether the petition states a valid claim of the denial of a constitutional right and (2)

8    whether the court's procedural ruling was correct. *See id.*

9    Having reviewed its determinations and rulings in adjudicating Grant's petition, the

10   Court declines to issue a certificate of appealability for its resolution of any procedural

11   issues or any of Grant's habeas claims.

12   **V.    CONCLUSION**

13   The Court notes that the parties made several arguments and cited to several

14   cases not discussed above. The Court has reviewed these arguments and cases and

15   determines that they do not warrant discussion as they do not affect the outcome of the

16   motions before the Court.

17   It is therefore ordered that Grant's second amended petition for writ of habeas

18   corpus (ECF No. 62) is denied.

19   It is further ordered that Grant's motions for extension of time (ECF Nos. 88, 89)

20   are granted *nunc pro tunc* as of their respective filing dates.

21   It is further ordered that a certificate of appealability is denied.

22   The Clerk of Court is directed to enter judgment accordingly and close this case.

23   DATED THIS 12th Day of August 2021.

24

25

26   _____
     MIRANDA M. DU

27   CHIEF UNITED STATES DISTRICT JUDGE

28

14